IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREG CRITTENDON, | ) | |
| Plaintiff | ) | C.A. No. 09-246 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM GROVE, CEO, | ) | Magistrate Judge Baxter |
| Defendant. | ) | |

## OPINION AND ORDER

United States Magistrate Judge Susan Paradise Baxter.

## I. INTRODUCTION

### A. Relevant Procedural History

Plaintiff, an inmate incarcerated at the State Correctional Institution at Albion, Pennsylvania, originally filed this case in the Court of Common Pleas of Erie County, Pennsylvania, as a civil rights action under 42 U.S.C. § 1983, against Defendant William Grove, CEO of the Mental Health Association of Northwestern PA ("Grove").

In his original complaint, Plaintiff claimed that Grove violated his Fourteenth Amendment due process and equal protection rights when he reported Plaintiff's criminal activity to the Erie City Police and then terminated Plaintiff's employment. Grove had this case removed to this Court pursuant to a Notice of Removal filed on September 30, 2009. Shortly thereafter, Grove filed a motion to dismiss Plaintiff's complaint, citing multiple grounds. [Document # 3]. In response, Plaintiff filed an amended complaint abandoning his original claims against Grove and raising new claims of employment discrimination under section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"); and the Pennsylvania Human Relations Act, 43 Pa.C.S. § 955 ("PHRA").

On November 17, 2009, Grove filed a motion to dismiss Plaintiff's amended complaint, arguing that: (i) Plaintiff failed to exhaust his administrative remedies with regard to his claims under Title VII, the ADEA, and the PHRA; (ii) Grove cannot be held individually liable under Title VII or the ADEA, in any event; and (iii) Plaintiff has failed to state a *prima facie* case of discrimination under Section 1981. [Document # 7]. Plaintiff has since filed a brief in opposition to Grove's motion. [Document # 9]. The parties have each consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [Document ## 11, 12]. This matter is now ripe for consideration.

### B. Relevant Factual History

Plaintiff, a self-described "elderly black man," was employed by the Mental Health Association of Northwestern PA ("MHA") on October 20, 2008, when he worked his regularly scheduled hours and went home. (Amended Complaint at ¶¶ 3, 4, 16). According to Plaintiff, he returned to MHA at approximately 2:50 a.m. on October 21, 2008, to retrieve his wallet that was left there. (Id. at ¶¶ 5-6). Plaintiff alleges that he entered the MHA facility with his access code and found his wallet after searching several areas. (Id. at ¶ 7-8).

When Plaintiff returned to work on October 22, 2008, Grove informed him that money was found missing from an office after a security video showed Plaintiff entering the facility at "an unusual hour," and that he was being suspended indefinitely pending an investigation by the Erie Police. (Id. at ¶ 9). Plaintiff was subsequently terminated from his job on November 12, 2008, "without an explanation of the reason." (Id. at ¶ 10).

On February 26, 2009, Plaintiff was arrested by the Erie Police and charged with Burglary, Criminal Trespass, and Theft by Unlawful Taking, related to the money that was taken from MHA on or about October 21, 2008. (Id. at ¶ 11). After a jury trial, Plaintiff was ultimately found guilty of the first two charges, and was acquitted of the third. (Id. at ¶ 12).

Plaintiff claims that his termination from employment was based on race and age discrimination. In particular, Plaintiff alleges that other employees of MHA had entered the facility "multiple times" after hours and did not have their employment terminated. Plaintiff

2

claims that these employees were younger and white. In addition, Plaintiff alleges that he was replaced by a "younger, white, person." (Id. at 15-17). As relief for his claims, Plaintiff seeks back pay and compensatory and punitive damages.

### C. Standards of Review
#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004)(citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery

will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible. This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.
>
> * * *
>
> After *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance.'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d

4

Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D. Discussion
#### 1. Title VII, ADEA and PHRA Claims
##### a. Exhaustion of Administrative Remedies

"Under Title VII and the ADEA, plaintiffs residing in states having an agency authorized to grant relief for federally prohibited employment discrimination must resort to that state remedy before they will be allowed access to federal judicial relief. Such states are termed 'deferral' states." Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000)(citations omitted). In Pennsylvania, the state agency authorized to grant relief for federally prohibited employment discrimination is the PHRA.

Under the PHRA, a plaintiff has 180 days from the date of the alleged discriminatory conduct to initiate his administrative remedies, while both Title VII and the ADEA provide a plaintiff with a 300-day window to initiate administrative action. Woodson v. Scott Paper Co., 109 F.3d 913, 925-26 (3d Cir. 1997)(noting that PHRA claims must be filed within 180 days of adverse employment action); 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d). Here, Defendant contends that Plaintiff failed to pursue any of his administrative remedies before seeking federal judicial relief in this Court. Defendant argues further that Plaintiff is foreclosed from doing so because the applicable time periods for pursuing administrative relief have expired, since Plaintiff was terminated from his employment on November 12, 2008. In his opposition brief, Plaintiff does not dispute that he failed to exhaust his administrative remedies.[1] Thus, Plaintiff's

---

[1] Instead, Plaintiff challenges Defendant's assertion that Pennsylvania is a deferral state. However, Pennsylvania's status as a deferral state is beyond dispute. See Watson, 235 F.3d at 854 ("it is undisputed that Pennsylvania is a deferral state"). Moreover, the fact that Pennsylvania is a deferral state actually works in a plaintiff's favor, as the time for initiating administrative remedies under Title VII and the ADEA is extended from 180 days to 300 days.

claims under Title VII, the ADEA, and the PHRA must be dismissed because Plaintiff has failed to exhaust his administrative remedies and the time for doing so has lapsed.

### b. Individual Liability

Alternatively, Defendant argues that Plaintiff is barred from bringing a claim against him under Title VII and the ADEA, because neither of these statutes creates a cause of action against individuals. The Court agrees. See Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1077-78 (3d Cir. 1996)(holding that individuals cannot be held liable under Title VII); Hill v. Borough of Kutztown, 455 F.3d 225, 246 n. 29 (3d Cir. 2006)(observing that there is no individual liability under the ADEA). Thus, even if Plaintiff had exhausted his administrative remedies, his claims under Title VII and the ADEA must still be dismissed for failure to state a claim upon which relief may be granted.

### 2. Section 1981 Discrimination Claim
#### a. Standard of Proof

The Third Circuit has held that the legal standard applicable to a Section 1981 case is identical to the standard in a Title VII case. Tucker v. Merck & Co., Inc., 2005 WL 1176565, *1 (3d Cir. 2005) (citing Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999)). Thus, Plaintiff's Section 1981 discrimination claim will be analyzed under the standards applicable to a Title VII case.

Title VII cases are analyzed according to the burden-shifting framework that was first established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff must first establish a *prima facie* case of discrimination by proving the following four basic facts: (i) he is a member of a protected class; (ii) he was the subject of an adverse employment action; (iii) he was qualified for the position in question; and (iv) he was discharged under circumstances that give rise to an inference of unlawful discrimination.

---

Nonetheless, Plaintiff failed to take advantage of this extended time period.

Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 353 (3d Cir. 1999). Proof of these basic facts raises an inference of discrimination, which is given the force and effect of a rebuttable presumption. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253-56 (1981).

Once a *prima facie* case is established, the employer must then articulate a legitimate, non-discriminatory reason for the adverse employment action. Burdine, 450 U.S. at 254. The employer need not persuade the court "that it was actually motivated by the proffered reasons," but needs only to raise a factual issue "as to whether it discriminated against the plaintiff." Id. at 254-55. This burden is satisfied if the employer "simply 'explains what [it] has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'" Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25, n.2 (1978). Thus, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Burdine, 450 U.S. at 257.

Once the employer has met its relatively light burden by articulating a legitimate reason for the adverse employment decision, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's proffered explanation is pretextual. Id. Plaintiff may meet this burden either directly, by persuading the court that the employer's action was more likely motivated by a discriminatory reason, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. See McDonnell Douglas, 411 U.S. at 804-805.

Throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff. See Burdine, 450 U.S. at 253-256. Plaintiff may meet this burden if his "*prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).

### b. *Prima facie* Case

Defendant argues that Plaintiff has failed to set forth a *prima facie* case of employment discrimination because his allegations "do not support an inference of discrimination," and, thus, do not satisfy the fourth prong of the McDonnell Douglas test. (Document # 8, Defendant's Brief, at p. 6). The Court agrees.

To establish the fourth prong of a prima facie case of race discrimination based on disparate treatment, Plaintiff must demonstrate that **similarly situated** non-protected persons were treated more favorably than he. Weldon v. Kraft, Inc., 896 F.2d 793, 797 (3d Cir. 1990); Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987) (emphasis added). "[T]o be deemed 'similarly situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). See also Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996)(proposed comparable employees must be similarly situated in all "material respects"); Lanear v. Safeway Grocery, 843 F.2d 298 (8th Cir. 1988)(plaintiff must prove that he and the white employee were similarly situated in all respects and that the other employee's acts were of comparable seriousness to his own); Dill v. Runyon, 1997 WL 164275 (E.D.Pa. Apr. 3, 1997). Moreover, "a plaintiff 'must establish some causal nexus between h[is] membership in a protected class' and the adverse employment decision complained of." Wilson v. Pallman, 2009 WL 2448577 at * 5 (E.D.Pa. Aug. 7, 2009), quoting Sarullo v. United States Postal Serv., 352 F.3d 789, 798 n. 7 (3d Cir. 2003).

Here, Plaintiff merely alleges that he is an elderly black man and that other younger, white employees "have been known to be in the facility multiple times after hours and have not... had their employment terminated." In addition, Plaintiff alleges that he was "replaced by a younger, white, person." (Amended Complaint at ¶¶ 15-17). However, Plaintiff "would need to allege more by way of factual content to 'nudg[e]' his claim of purposeful discrimination 'across the line from conceivable to plausible." Iqbal, 129 S.Ct. at 1952, quoting Twombly, 550

8

U.S. at 570.  In particular, the amended complaint "does not contain any factual allegation sufficient to plausibly suggest [Defendant's] discriminatory state of mind." Iqbal, 129 S.Ct. at 1952.

Moreover, there is nothing indicating that the other "younger, white" employees engaged "in the same conduct [as Plaintiff] without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell, 964 F.2d at 583.  In Plaintiff's case, he was caught on videotape entering MHA's facility at around 2:30 a.m., after which it was discovered that money was missing from the facility, a criminal investigation of Plaintiff's activities ensued, and Plaintiff's employment was subsequently terminated as a result.  This unique set of circumstances is easily distinguishable from the alleged conduct of other "younger, white" employees who often entered the facility "after hours," without consequence.  Consequently, these "other employees" cannot be found to have been similarly situated to Plaintiff in all "material respects."

For the foregoing reasons, Plaintiff has failed to set forth a *prima facie* claim of discrimination under Section 1981, and the same must be dismissed.

### III.  CONCLUSION:

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Document # 8] is GRANTED and this case is dismissed.

The Clerk is directed to mark this case closed.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  July 8, 2010